1

**BRADLEY/GROMBACHER, LLP**

2
Marcus J. Bradley (SBN 174156)
Kiley L. Grombacher (SBN 245960)

3
Lirit A. King (SBN 252521)

4
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361

5
Telephone: (805) 270-7100

6
Facsimile: (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com

7
          kgrombacher@bradleygrombacher.com

8
          lking@bradleygrombacher.com

9
Attorneys for Plaintiff, Sharon Peskett individually

10
and on behalf of all others similarly situated

11
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

12

13
SHARON PESKETT, individually
and on behalf of other individuals
similarly situated,

14

15
                    Plaintiffs;

16

17
          v.

18

19
LEVY PREMIUM FOODSERVICE
LIMITED PARTNERSHIP an
Illinois limited partnership,
COMPASS GROUP USA, INC, a
Delaware corporation

20

21

22
                    Defendants.

Case No. **2:20-cv-05694-SWV-PVC**

[Assigned to: Judge Stephen V. Wilson]

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR CLASS
CERTIFICATION; MEMORANDUM
OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Date: August 16, 2021
Time: 1:30 p.m.
Courtroom: 10A

Complaint filed: June 25, 2020

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Monday, August 16, 2021 at 1:30 p.m. or as soon thereafter as counsel may be heard, in Courtroom 10A of the United States District Court for the Central District of California, located at 350 W. 1st Street, 10th Floor, Los Angeles, California 90012, Plaintiff Sharon Peskett will and hereby does move for an Order certifying the following class under Rules 23(a) (b)(2) and (b)(3) of the Federal Rules of Civil Procedure:

All individuals who have not signed Defendants' Arbitration Agreement for California Associates,[1] who have been, or currently are, employed by Defendants, are hourly-paid, and who held, or hold, job positions which Defendants have classified as "non-exempt"[2] in the State of California at any time from June 25, 2016 until the date class notice is provided under Fed. R. Civ. P. 23(c)(2).

Plaintiff's proposed definition is intended to supersede the definition in the Class Action Complaint. *See* Dkt. 1 at ¶ 63. In addition, Plaintiff's motion for class certification is limited to the following causes of action of the Complaint, in the following respects:

1. First Cause of Action for failure to pay wages for all hours worked;

2. Second Cause of Action: Violation of Labor Code § 226(a); and

3. Seventh Cause of Action: Violation of California Business and Professions Code §§ 17200, *et seq.*, but only insofar as such violation is predicated on one or more violations alleged in the First or Second, Causes of Action as described herein.

Plaintiff does not seek certification of the Third, Fourth, Fifth, or Sixth Causes of Action, which pertain to improper service charges,[3] intentional

---

[1] See Ex. 7 to declaration of Kiley L. Grombacher ("Grombacher") submitted herewith, DEF000345.

[2] The term "non-exempt employee" refers to those who Defendants have classified as non-exempt from the overtime wage provisions of the California Labor Code.

[3] Given that much of the discovery related to the gratuity claim is within the sole possession, custody and control of Defendant, Plaintiff cannot, with the limited discovery produced

interference with advantageous relations, breach of contract and unjust enrichment. Nor does Plaintiff seek certification of the Eighth Cause of Action, which is a representative law enforcement claim for civil penalties brought under the Private Attorneys General Act (PAGA) or the Ninth Cause of Action for violations of the Fair Labor Standards Act (FLSA).

Plaintiff further moves the Court to appoint Plaintiff Sharon Peskett to represent the class under Fed. R. Civ. P. 23(a)(4), and Bradley Grombacher LLP to serve as class counsel under Fed. R. Civ. P. 23(g)(1) & (4).

This motion is based on the accompanying memorandum of points and authorities; the Declaration of Kiley Grombacher; the Declaration of Named Plaintiff Sharon Peskett; the Expert Declaration of Martin Shapiro; Plaintiff's proposed Trial Plan; the compendium of Class Member declarations; such oral argument as may be heard by the Court; and all other papers on file in this action.

Respectfully Submitted,

**BRADLEY GROMBACHER LLP**

Dated:  July 19, 2021            By:  */s/ Kiley L. Grombacher*

Kiley L. Grombacher

Attorneys for Plaintiff

---

meaningfully evaluate the propriety of certification of such claim.  The procedural posture of the litigation and the status of discovery is discussed in detail in the memorandum of points and authorities and Grombacher Declaration submitted herewith.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MPA IN SUPPORT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................1

II.   BACKGROUND ............................................................................................1

    A.    Summary of Procedural History and Discovery ................................1

    B.    Statement of Facts .............................................................................4

        1.    Defendants' highly profitable operations ...........................4

        2.    The Class Members have similar working conditions........................5

        3.    Defendants' timekeeping and compensation policies are uniform across the Class .............................................................6

        4.    The Class Members are required to undergo security checks and check-in procedures ............................................................6

        5.    Class Members wait for security checks and check-in procedures to be conducted .............................................................7

        6.    Defendants do not compensate Class Members for time spent waiting for or undergoing security checks and check-in procedures...............8

        7.    Security checks and check-in procedures are for Defendants' benefit ...................................................................................10

        8.    Defendants can easily record waiting time spent waiting for and undergoing security checks and check-in procedures ....................10

        9.    Defendants have shifted their recordkeeping burdens onto the Class Members in an attempt to insulate themselves from liability ..........10

III.  SUMMARY OF APPLICABLE LAW.............................................................11

    A.    Obligation to pay for All Hours Worked.............................................11

    B.    Obligation to Provide Accurate Wage Statements................................12

    C.    Restitution for Unfair Competition Claims .........................................12

    D.    Standards Governing Motions for Class Certification.........................13

IV.   ARGUMENT ...............................................................................................15

    A.    The proposed Class meets the requirements of Rule 23(a) ...................15

        1.    Plaintiff satisfies numerosity ...........................................15

        2.    Plaintiff satisfies commonality under Rule 23(a)(2) because admittedly common policies, practices and deficiencies are apt to drive resolution of the litigation.......................................15

a.   Commonality is measured against Plaintiff's legal theory as to how Defendant's policies fall short of the minimum legal duties of an employer .......................................................................16

b.   Defendants' security check and check-in procedures present common questions concerning whether Defendants are "suffering or permitting" work ..............................................................17

c.   Written and anecdotal evidence that Defendants instruct the class members to arrive significantly before they are permitted to clock-in presents a common question as to whether Defendants are meeting their legal obligation to pay for all hours worked ...18

d.   Security Check Cases Are well-suited for Class Certification ...19

e.   The failure to identify all hours worked on the wage statements presents a common claim under Labor Code 226(a) and is directly attributable to the security and check-in policies and practices.......................................................................................20

   3.   Plaintiff satisfies typicality under Rule 23(a)(3) ..............................20

   4.   Plaintiff is an adequate representative under Rule 23(a)(4)..............21

B.   The proposed class satisfies the requirements of Rule 23(b)(2).............21

C.   The proposed class satisfies the requirements of Rule 23(b)(3).............21

   1.   Common questions predominate over individual questions.............21

   2.   A class action is superior to the other available methods for fairly and efficiently adjudicating the controversy...........................................23

V.   A CLASS-WIDE TRIAL IS MANAGEABLE.................................................24

VI.   CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alberts v. Aurora Behavioral Health Care*
241 Cal. App. 4th 388 (2015)..................................................................16

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997)..................................................................21, 22, 23

*Arthur Young & Co. v. United States Dist. Court*
549 F.2d 686 (9th Cir. 1977)
*cert. denied* 434 U.S. 829 (1977) ..........................................................13

*Blackie v. Barrack*
524 F.2d 891 (9th Cir. 1975)
*cert. denied*, 429 U.S. 816 (1976) ........................................13, 14, 24

*Brinker Rest. Corp. v. Superior Court*
53 Cal. 4th 1004 (2012) ..........................................................................18

*Chavez v. Converse, Inc.*
No. 15-3746 NC, Dkt. No. 89 (N.D. Cal. 2016)..................................19

*Dalton v. Lee Publ'ns, Inc*
270 F.R.D. 555 (S.D. Cal. 2010)..........................................................24

*Dilts v. Penske Logistics, LLC*
267 F.R.D. 625 (S.D. Cal. 2010)..........................................................23

*Dominguez v. Schwarzenegger*
270 F.R.D. 477 (N.D. Cal. 2010) ........................................................14

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974)..........................................................................13, 14

*Evon v. Law Offices of Sidney Mickell*
688 F.3d 1015 (9th Cir. 2012) ..............................................................15

*Frlekin v. Apple Inc.*
309 F.R.D. 518 (N.D. Cal. 2015) ........................................................20

*Frlekin v. Apple Inc.*
8 Cal. 5th 1038 (2020)
reh'g denied (May 13, 2020)..........................................................12, 18

*Greer v. Dick's Sporting Goods, Inc.*
2017 WL 1354568 (E.D. Cal. 2017) ..............................................19, 25

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir.1998)..........................................................20, 21

*Huntsman v. Sw. Airlines Co.*
2021 WL 391300, at *4 (N.D. Cal. 2021) .......................................20, 22

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*
691 F.2d 1335 (9th Cir. 1982) ..................................................14

*Jimenez v. Allstate Ins. Co.*
765 F.3d 1161 (9th Cir. 2014) ...............................................17, 24

*Johns v. Bayer Corp.*
2012 WL 368032 (S.D. Cal. 2012) ............................................14

*Kurihara v. Best Buy Co. Inc.*
2007 WL 2501698 (N.D. Cal. 2007) .........................................20, 25

*Lao v. H&M Hennes & Mauritz, L.P.*,
2018 WL 3753708 (N.D. Cal. 2018) ...........................................20

*Lewis v. Alert Ambulette Serv. Corp.*
2012 WL 170049, at *10 (E.D.N.Y. 2012) ....................................15

*Leyva v. Medline Industries Inc.*
716 F.3d 510 (9th Cir. 2013) .................................................23

*Lillehagen v. Alorica*, Inc.
2014 WL 6989230 (C.D. Cal. 2014) .........................................17, 18

*Martinez v. Combs*
49 Cal.4th 35 (2010) ..........................................................17

*Mazza v. Am. Honda Motor Co.*
254 F.R.D. 610 (C.D. Cal. 2008)...............................................14

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
672 F.3d 482 (7th Cir. 2012)..................................................22

*Messner v. Northshore Univ. HealthSystem*
669 F.3d 802 (7th Cir. 2012)..................................................23

*Moore v. Hughes Helicopters, Inc.*
708 F.2d 475 (9th Cir. 1983)..................................................13

*Moore v. Ulta Salon Cosmetics & Fragrance Inc.*
311 F.R.D. 590 (C.D. Cal. 2015)...........................................13, 20

*Morillion v. Royal Packing Co.*
22 Cal. 4th 575 (2000) .......................................................17

*Otsuka v. Polo Ralph Lauren Corp.*
2010 WL 366653 (N.D. Cal. 2010).............................................20

*Parsons v. Ryan*
754 F.3d 657 (9th Cir. 2014)..................................................21

*Perez v. Safety-Kleen Systems, Inc.*
253 F.R.D. 508 (N.D. Cal. 2008) ...................................................24

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 (1985)........................................................................23

*Phillips v. Sheriff of Cook Cnty.*
828 F.3d 541 (7th Cir. 2016).........................................................22

*Rannis v. Recchia*
380 Fed. Appx. 646 (9th Cir. 2010) ...............................................15

*Rodriguez v. Nike Retail Services, Inc.*
2016 WL 8729923 (N.D. Cal. 2016)..........................................19, 25

*Scholl v. Mnuchin,*
489 F. Supp. 3d 1008 (N.D. Cal. 2020)..........................................15

*Smith v. Ford Motor Company*
749 F.Supp.2d 980 (N.D. Cal. 2010)..............................................23

*Staton v. Boeing Company*
327 F.3d 938 (9th Cir. 2003)..........................................................14

*Thomas v. Baca*
231 F.R.D. 397 (C.D. Cal. 2005).....................................................24

*Torres v. Mercer Canyons Inc.*
835 F.3d 1125 (9th Cir. 2016)........................................................22

*Troester v. Starbucks Corp.*
5 Cal.5th 829 (2018) ......................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*
136 S. Ct. 1036 (2016)...............................................................23, 25

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers*
*Int'l Union, AFL–CIO v. ConocoPhillips Co.*
593 F.3d 802 (9th Cir.2010).......................................................13, 16

*Valentino v. Carter- Wallace, Inc.*
97 F.3d 1227 (9th Cir. 1996)..........................................................13

*Villalpando v. Exel Direct Inc.*
2016 WL 1598663 (N.D. Cal. 2016)...............................................16

*Wal-Mart Stores, Inc. v. Dukes*
131 S.Ct. 2541 (2011).................................................13, 15, 16, 20

*Wang v. Chinese Daily News, Inc.*
737 F.3d 538 (9th Cir. 2013)..........................................................22

## Statutes

Bus. & Prof. Code § 17200 .......................................................... ii, 12, 23

Labor Code § 226(a) ..................................................................... passim

Labor Code § 226(e) ..................................................................12, 20

## Regulations

29 C.F.R. § 785.13 ..................................................................17

## Rules

Fed. R. Civ. Proc. 23 ..................................................................... passim

## Other Authorities

*Newberg on Class Actions* (4th ed. 2002) ................................................13

# I. **INTRODUCTION**

This case challenges Defendants Levy Premium Foodservice's and Compass Group USA, Inc.'s (hereinafter "Defendants") systematic under-compensation of their employees through unlawful policies and practices uniformly applied in California. The basis of Plaintiff's Complaint is that Defendants fail to pay their employees for time spent undergoing security inspections and check-in procedures for Defendants' benefit. This practice is standard and applies consistently to every member of the proposed Class upon arrival onsite at the staffed venues, such as stadiums and large entertainment venues. These inspection and check-in procedures occur before the employee is permitted to clock in and, including wait time, can take 30 minutes to an hour, and sometimes longer. Defendants use a uniform employee handbook for all California workers that is silent as to whether these inspections and check-in procedures are to be conducted on-the-clock and the evidence submitted with this motion demonstrates that Defendants do not consider this time to be compensable. Whether time spent complying with and subject to security inspections and check-in procedures is compensable is a legal question which can and should be answered for the Class as a whole in a single proceeding. Thus, Defendants cannot meaningfully contest class certification.

# II. **BACKGROUND**

## A. Summary of Procedural History and Discovery

This case was filed in this Court on June 25, 2020. (Dkt. No. 1). On August 14, 2020, each of the Defendants provided a Notice of Acknowledgement and Receipt of summons which were filed by Plaintiff the same day (Dkt. Nos. 13 and 14). On September 4, 2020, Defendants filed a motion to dismiss Plaintiff's Fourth, Fifth, and Sixth Causes of Action pursuant to FRCP 12(b)(6). (Dkt. No. 16). On September 14, 2020, Plaintiff filed her opposition to Defendants' motion and on September 21, 2020, Defendants filed their reply. (Dkt. Nos. 21 and 21). On February 11, 2021, the Court issued a Minute Order denying Defendants' motion to dismiss. Defendants filed their answer on February 26, 2021.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MPA IN SUPPORT

Although a scheduling conference has not yet been held in this matter, following resolution of the pleadings and the filing of Defendants' answers, the parties met and conferred regarding the nature of this case, anticipated discovery, future proceedings, and the potential for settlement. *See* Declaration of Kiley L. Grombacher ("Grombacher") at ¶¶ 10-12; *see also* Stipulations (Dkt. Nos. 27 and 30) at ¶¶ 4-6.

On March 4, 2021, the Court ordered Plaintiff to move for class certification on or before May 17, 2021. (Dkt. 26). On March 30, 2021, Plaintiff served Requests for Production and Special Interrogatories on each Defendant. Grombacher at ¶ 11. Also on March 30, 2021, Plaintiff served her initial disclosures on Defendants.[4] *Id.* at ¶ 13.

At the same time, the parties were engaging in settlement discussions related to this action and exchanged documents and information to facilitate those discussions. (Dkt. No. 27 at ¶ 10.) The parties further met and conferred regarding overlapping litigations pending in the Superior Court for the State of California, including, *Hightower v. Compass Group U.S.A., Inc., et al.* Santa Clara County Superior Court Case Nos. 19CV359262, 20CV362571 ("*Hightower*"). *See* Grombacher at ¶ 15; *see also* Stipulation (Dkt. No. 27) at ¶¶ 7-8.  On April 30, 2021, the Parties filed a joint stipulation to extend the May 17, 2021 deadline for Plaintiff to file her class certification motion in light of ongoing settlement negotiations between the parties here and in the *Hightower* cases. Stipulation (Dkt. No. 27) at ¶¶ 9-10.

On Monday, May 3, 2021, Defendants requested an extension on their time to respond to Plaintiff's discovery requests. Grombacher at ¶ 14. However, because the Court had not yet ruled on the Parties' joint stipulation to extend the class certification deadline, Plaintiff was only able to provide an extension to the end of the week. *Id.* at ¶

---

[4] To date, Defendants have not served their initial disclosures on Plaintiff. *Id.* at ¶ 13. On June 3, 2021, the parties met and conferred on this and other discovery matters (discussed further below) at which time Defense Counsel represented that Defendants' failure to serve their initial disclosures was an oversight and that Defendants would be serving them shortly. *Id.* However, to date, Defendants still have not served their initial disclosures on Plaintiff. *Id.*

-2-

14. On May 4, 2021, the Court extended the deadline for Plaintiff to file her Class certification to July 19, 2021. (Dkt. No. 28). Plaintiff subsequently agreed to extend the deadline for Defendants to respond to Plaintiff's written discovery requests until June 1, 2021. Grombacher at ¶ 14. On June 1, 2021, Defendants served their responses and objections to Plaintiff's document requests and served objections to Plaintiff's special interrogatories. *Id.* at ¶ 14.

On June 1, 2021 through June 4, 2021, the parties met and conferred via email and telephonically regarding Defendant's failure to provide initial disclosures, deficient discovery responses, and refusal to provide class contact information, in anticipation of requesting an informal discovery conference before Magistrate Judge Castillo. *Id.* at ¶ 11. However, as a result of the parties' meet and confer, Defendants agreed to provide initial disclosures[5] and to a *Belaire-West* procedure with respect to class contact information. *Id.*

On June 3, 2021, Defendants produced 344 pages of documents responsive to Plaintiff's document requests, which were later supplemented with additional pages. *Id.* at ¶ 14. On June 4, 2021, Plaintiff sent Defendants a proposed *Belaire* Notice and Stipulated Protective Order. *Id.* at ¶ 11. Also on June 4, 2021, Plaintiff served notices of depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) on Defendants for June 17, 2021 and June 18, 2021. *See* Stipulation (Dkt. No. 30) at ¶ 10.

With respect to the deposition of Defendants' witnesses pursuant to F.R.C.P. 30(b)(6), Defendants represented that they would be producing two to three individuals, however, in light of the unavailability of the witnesses and the unavailability of defense counsel from July 6-July 16, the depositions of Defendants' F.R.C.P. 30(b)(6) witnesses could not occur until the week of July 19, 2021. *See* Stipulation (Dkt. No. 30) at ¶ 14. Thus, on July 1, 2021, the Parties' submitted a joint stipulation to extend the deadline for Plaintiff to file her class certification motion from July 19, 2021 to October 4, 2021,

---

[5] As noted above, to date, Plaintiff has not received initial disclosures from either Defendant. *Id.* at ¶ 13.

to permit the Parties time to complete the *Belaire* process, permit Plaintiff to interview class members following such procedure, permit the depositions of Defendants' F.R.C.P. 30(b)(6) witnesses in advance of class certification, and to allow for continued settlement negotiations. *See* Stipulation (Dkt. No. 30) at ¶ 16. On July 7, 2021, the Court issued an order denying the Parties' stipulation. (Dkt, No. 31).

On July 13, 2021, Defense counsel represented that Defendants' witnesses pursuant to F.R.C.P. 30(b)(6) will be available for deposition on August 11 and 13. Grombacher at ¶ 12. Plaintiff anticipates taking the Defendants' depositions at that time. *Id*. Plaintiff further anticipates that the *Belaire* notice will issue soon to a representative sample of 30% of the proposed California Class Members (limited to those individuals who have not signed arbitration agreements with Defendants). *See id*.; *see also* Stipulation (Dkt No. 30) at ¶ 12.

**B. Statement of Facts**

1.  <u>Defendants' highly profitable operations</u>

Defendant Levy Premium Foodservice is a restaurant and hospitality company based in Chicago specializing in providing food and beverages to major entertainment and sports venues in California and nationwide.[6] Among other venues and locations in California, Defendants operate at the Staples Center in Los Angeles, the Oakland Arena, Dodger Stadium in Los Angeles, the Rose Bowl in Pasadena, and Levi's Stadium.[7] Defendant Levy is a wholly owned subsidiary of Defendant Compass Group USA.[8] Following Compass' acquisition of Levy, annual revenues increased tenfold — from $200 million to $2 billion. *Id*.

Plaintiff Sharon Peskett worked for Defendants a "Runner" at Dodger Stadium

---

[6] https://www.bizjournals.com/chicago/news/2017/02/09/larry-levy-creates-chicago-food-service-empire.html
[7] http://www.levyrestaurants.com/venues-events/
[8] https://www.chicagotribune.com/business/ct-biz-super-bowl-food-provider-levy-chicago-20190129-story.html (explaining that Defendant Compass first purchased approximately 49 percent of Levy for $87 million in 2000, and acquired the rest of the company for $250 million in 2006).

-4-

from 2018 to 2019 and as a "Premium Suite Attendant" at the Rose Bowl in Pasadena until 2020. Declaration of Sharon Peskett ("Peskett") at ¶¶ 1-3. Both Dodger Stadium and the Rose Bowl are large venues in Los Angeles County that are utilized for sporting events and music concerts and which generate massive ticket sales.  Dodger stadium has a capacity of approximately 56,000 people,[9] and the Rose Bowl has a capacity of approximately of 92,500 people.[10]

<h3 style="text-align:center">2.    The Class Members have similar working conditions</h3>

Defendants employ the Class Members as premium club attendants, food runners, bussers, dishwashers, cashiers, concession stand workers, cooks, prep cooks, line cooks, bartenders, barbacks and baristas, among other positions, at major entertainment and sports venues in California.[11] Shifts for these workers are long. *See* Peskett at ¶¶ 4-14; Declaration of Jasmine Fagan-Williams ("Williams") at ¶ 11; Declaration of Aaron Peskett ("Aaron") at ¶ 14; Declaration of Jerome Ta ("Ta") at ¶ 9; Declaration of David Mendelsohn ("Mendelsohn") at ¶ 8; Declaration of Sharon Hancock ("Hancock") at ¶ 9; Declaration of Sherrill Anderson ("Anderson") at ¶¶ 3-6; Declaration of Monique Reyes ("Reyes") at ¶¶ 4-10; Declaration of Dejone Cyiark ("Cyiark") at ¶ 4. For example, a typical game day shift will be 8-12 hours or longer, starting with arriving well before game time (if not the day preceding), and finishing up an hour or so after the game ends. *See* Peskett at ¶¶ 4-16; Williams at ¶¶ 11; Aaron at ¶ 14; Ta at ¶ 9; Mendelsohn at ¶ 8. Arrival procedures for the Class Members are invariably extensive and uncompensated. *See* Peskett at ¶¶ 4-14; Williams at ¶¶ 6-10; Aaron at ¶¶ 5-13; Ta at ¶¶ 5-9; Mendelsohn at ¶¶ 3-8; Declaration of Rochelle Saucillo ("Saucillo") at ¶¶ 4-6; Hancock at ¶¶ 4-7; Anderson at ¶¶ 3-6; Reyes at ¶¶ 5-9; Cyiark at ¶¶ 5-9. These include parking offsite and/or securing parking passes; long walks to the stadium or waiting for and traveling on shuttles; waiting in line with employees and other vendors at stadium security; undergoing security inspections; waiting for access

[9] https://www.mlb.com/dodgers/history/ballparks
[10] https://www.discoverlosangeles.com/visit/rose-bowl-stadium-the-story-of-an-la-icon
[11] *See* https://workatlevy.com/jobs, California, Hourly.

passes and/or wrist bands and section assignments from Defendants; and walking long distances to assigned sections, all before reaching the time clock locations. *Id.* Needless to say, the Class Members routinely work off the clock and incur unpaid overtime. Peskett at ¶¶ 15-16; Williams at ¶ 11; Aaron at ¶ 14; Ta at ¶ 9; Mendelsohn at ¶ 8; Saucillo at ¶ 8; Hancock at ¶ 9; Anderson at ¶¶ 3-6; Reyes at ¶¶ 5-10; Cyiark at ¶¶ 5, 10.

      3.   <u>Defendants' timekeeping and compensation policies are uniform across the Class</u>

      The Class Members are uniformly paid by the hour. *See* proposed class definition, *supra,* p. ii. Defendants track the Class Members' time using physical time clocks located inside the stadiums or other venues. Peskett at ¶¶ 8, 12; Williams at Ex. A, ¶ 11; Aaron at ¶ 11; Ta at ¶ 8; Mendelsohn at ¶ 7; Saucillo at ¶ 6; Hancock at ¶ 7; Anderson at ¶ 4; Reyes at ¶ 9; Cyiark at ¶¶ 5-10. Defendants' common timekeeping policies and procedures apply to all of these employees on a uniform basis. *See* Ex. 2 to Grombacher,[12] DEF000049-52; Ex. 3 at DEF000071-96. Moreover, Defendants' written overtime compensation policy applies uniformly to all of its nonexempt employees in California. Ex. 2 at DEF000052; Ex. 3 at DEF000080. There are no variations in Defendants' policies, procedures and practices with regard to timekeeping and compensation of the Class Members based on the venue(s) or location(s) at which they work for Defendants in California. *See* Ex. 2 at DEF000049-52; Ex. 3 at DEF000071-96. *see also*, Peskett at ¶ 9; Aaron at ¶ 4.[13]

      4.   <u>The Class Members are required to undergo security checks and check-in procedures</u>

      Defendants and their clients require their California workers to undergo security

---

[12] All exhibit numbers refer to the Grombacher declaration filed concurrently herewith.

[13] The same is true with respect to Defendants' locations outside California. Attached as Exhibit 9 to the declaration of Kiley L. Grombacher is a declaration from one of Defendants' workers in Milwaukee, Wisconsin who complains of the same deficient timekeeping and compensation policies and practices as the Class Members here.

checks and check-in procedures at the start of their shift. Peskett at ¶¶ 5-6, 11-12; Williams at ¶¶ 7-8; Aaron at ¶¶ 5-10; Ta at ¶¶ 5-6; Mendelsohn at ¶¶ 3-4; Saucillo at ¶¶ 4-6; Hancock at ¶¶ 4-7; Anderson at ¶¶ 3-5; Reyes at ¶ 7; Cyiark at ¶¶ 7-8. The security check process generally requires employees to go through a metal detector and be checked by a handheld metal detector if the walk-through detector sounds. Peskett at ¶ 5; Williams at ¶ 7; Aaron at ¶¶ 8-10; Ta at ¶¶ 5-6; Mendelsohn at ¶¶ 3-4; Saucillo at ¶¶ 5-6; Cyiark at ¶ 7. Items such as bags must be opened for security personnel to look inside, and security has discretion to inspect pocket bulges as well. Peskett at ¶ 5; Williams at ¶ 7; Saucillo at ¶ 5; This initial security check could take 5 to 20 minutes or longer, including waiting time (discussed further below). Peskett at ¶¶ 5, 11 (5 to 10 minutes at Rose Bowl; 15 to 20 minutes at Dodger Stadium); Williams at ¶ 7 (5 to 10 minutes); Aaron at ¶ 9 (10 to 15 minutes); Ta at ¶ 5 (10 to 15 minutes); Mendelsohn at ¶ 3 (10 to 15 minutes); Saucillo at ¶ 5 (5 minutes); Hancock at ¶ 4 (10 to 15 minutes); Anderson at ¶ 3 (10 to 15 minutes); Reyes at ¶ 7 (half an hour); Cyiark at ¶ 8 (10 to 15 minutes).

In addition to the security inspection process, Class Members must also undergo additional check-in procedures in order access the facilities at which they are working. Peskett at ¶¶ 6, 12; Williams at ¶ 8; Aaron at ¶ 10; Ta at ¶ 6; Mendelsohn at ¶ 4; Saucillo at ¶ 4; Hancock at ¶ 4; Anderson at ¶ 4; Reyes at ¶ 8; Cyiark at ¶ 7. This can include having their ID checked against a list of names, getting area assignments. being provided an access wristband or pass, and often undergoing an additional security inspection. Peskett at ¶¶ 6, 11; Williams at ¶ 8; Aaron at ¶ 10; Ta at ¶ 6; Mendelsohn at ¶ 4; Saucillo at ¶ 4; Cyiark at ¶ 7. This process takes an additional 5 minutes to an hour, including wait time (discussed further below). Peskett at ¶¶ 6 (10 minutes to an hour at the Rose Bowl); Williams at ¶ 8 (10 minutes to 30 minutes); at ¶ 10 (10 minutes at the Rose Bowl); Ta at ¶ 6 (5 minutes or longer); Mendelsohn at ¶ 4 (same); Saucillo at ¶ 4 (15 minutes); Hancock at ¶ 4 (5 to 10 minutes); Cyiark at ¶ 7 (10 to 15 minutes).

    5.    <u>Class Members wait for security checks and check-in procedures to be</u>

conducted

In addition to the time spent undergoing the actual security check and check-in procedures, Class Members wait for these checks and procedures to be conducted. Peskett at ¶¶ 5-6, 11 Williams at ¶¶ 7-8; Aaron at ¶¶ 8-10; Ta at ¶¶ 5-6; Mendelsohn at ¶¶ 3-4; Saucillo at ¶¶ 4-5; Hancock at ¶ 4; Anderson at ¶¶ 3-5; Reyes at ¶ 7; Cyiark at ¶¶ 7-8. These waits are caused by high numbers of employees and other vendors arriving simultaneously to begin their shifts prior to an event. Peskett at ¶ 11; Aaron at ¶ 9; Saucillo at ¶ 4; Hancock at ¶ 4; Cyiark at ¶¶ 7-8.

6.     Defendants do not compensate Class Members for time spent waiting for or undergoing security checks and check-in procedures

Security checks and check-in procedures occur off-the-clock and, thus, are not compensated. Peskett at Ex. A, ¶¶ 8, 12, 14; Williams at Ex. A, ¶ 9; Aaron at ¶ 12; Ta at ¶ 7; Mendelsohn at ¶ 6; Saucillo at ¶ 6; Hancock at ¶ 5; Anderson at ¶¶ 3-5; Reyes at ¶¶ 5-9; Cyiark at ¶¶ 5-10. Indeed, Defendants' employees are often not clocked into any timekeeping system until they are actually inside their assigned section of the facility. Peskett at Ex. A, ¶ 7, 12, 14; Williams at Ex. A, ¶ 9; Aaron at Ex. A, ¶¶ 5-11; Ta at ¶¶ 7-8; Mendelsohn at ¶¶ 3-6; Saucillo at ¶ 6; Hancock at ¶¶ 5-7; Anderson at ¶ 5; Reyes at ¶ 9; Cyiark at ¶ 9. This is because Defendants' time clocks are placed inside the facility and often at a significant distance from the entrance. Peskett at ¶ 7, 12, 14; Williams at Ex. A (email instructing "Premium Check in will be at Flood Gate 11, map attached. There you will receive your wristband and directed to the Pavilion to clock in."), ¶ 9; Aaron at ¶ 11; Ta at ¶ 8; Mendelsohn at ¶ 7; Saucillo at ¶¶ 4-6; Hancock at ¶ 6; Anderson at ¶ 4; Reyes at ¶ 9. As a result, after having already spent substantial time off the clock undergoing security checks and check-in procedures, Class Members must also walk long distances to actually clock in for shifts. Peskett at ¶ 7, 12; Williams at ¶ 9; Aaron at ¶ 11; Ta at ¶ 8; Mendelsohn at ¶ 7; Hancock at ¶¶ 6-7; Anderson at ¶ 4; Reyes at ¶ 9. For example, class members report that the walk from the entrance to time clock at the Rose Bowl takes 10 to 15 minutes or longer if crowded. Peskett at ¶ 7, 12

(20 to 25 minutes at the Rose Bowl and 10 to 20 minutes at Dodger stadium); Williams at ¶ 9 (20 to 25 minutes); Aaron at ¶ 11 (10 to 20 minutes); Ta at ¶ 8 (15 to 20 minutes); Mendelsohn at ¶ 7 (same); Hancock at ¶ 6 (15 to 20 minutes); Reyes at ¶¶ 9 (15 to 20 minutes). Relying on the use of escalators or elevators can extend this time even longer, because of the lines. Peskett at ¶ 12 (20 to 30 minutes); Reyes at ¶ 9 (15 to 20 minutes). Class Members routinely report that by the time they are actually able to clock in for their shifts, they have typically been onsite undergoing security checks and check-in procedures for 30 minutes to an hour or longer. Peskett at ¶ 8; Williams at ¶¶ 7-9; Aaron at ¶¶ 6, 9-11; Ta at ¶¶ 3-8; Mendelsohn at ¶¶ 3-7; Hancock at ¶¶ 4-7; Anderson at ¶¶ 3-5; Reyes at ¶¶ 5-9; Cyiark at ¶¶ 5-9.

Additionally, Defendants' timekeeping policies do not provide that security checks and check-in procedures should be performed on the clock. *See* Ex. 2 at DEF000050 (setting forth examples of off the clock work but omitting time spent undergoing security checks and check-in procedures). Defendants do not consider the time undergoing these tasks to be compensable work. *See* Peskett at ¶ 8; Williams at ¶ 9; Aaron at ¶ 11; Ta at ¶ 8; Saucillo at ¶ 6; Hancock at ¶ 7; Anderson at ¶¶ 3-4; Reyes at ¶¶ 5-9; Cyiark at ¶ 9. Indeed, while Class Members are instructed to arrive well before they shift, they are prohibited from clocking in until they have arrived at their station and then, in no event more than 7 minutes prior to their start time. *See* Ex. A to Peskett (instructing Class Members to come in "an extra hour" early so that they can "arrive in [] full uniform on Game Day (1/1/2020) at [their] scheduled call time."); *see also*, Peskett at ¶ 8; Williams at Ex. A (instructing Class Members to check in and get their wrist bands and then will be directed where to clock in), at ¶ 9; Aaron at Ex. A, ¶ 11; Ta at ¶ 8; Saucillo at ¶¶ 6-7; Hancock at ¶ 7; Anderson at ¶¶ 3-4; Reyes at ¶¶ 5-9; Cyiark at ¶ 9. Additionally, Defendants do not inform the Class Members they may be compensated for the time they spend going through checks, regardless of the duration of the checks and their accompanying wait time. Peskett at ¶ 14; Williams at Ex. A, ¶ 9; Aaron at ¶ 12; Ta at ¶ 7; Mendelsohn at ¶ 6; Saucillo at ¶ 6; Hancock at ¶ 5; Anderson

1    at ¶ 5; Cyiark at ¶ 9.

2           7.     <u>Security checks and check-in procedures are for Defendants' benefit</u>

3           Security checks and check-in procedures are conducted for Defendants' benefit,

4    not the benefit of the Class Members. First, both the initial security inspections and any

5    subsequent inspection during check-in are designed to prevent individuals, including

6    Plaintiff and the Class Members, from bringing in alcoholic beverages so that customers

7    must purchase exclusively from Defendants. Peskett at ¶ 13; Ta at ¶ 7; Mendelsohn at

8    ¶ 5; Additionally, the check in procedures benefit Defendants because without the wrist

9    bands distributed to Plaintiff and the Class Members, they would not be able to access

10    the areas of the venues in order to do their work for Defendants. Peskett at ¶ 13; Aaron

11    at ¶ 10; Ta at ¶ 7; Mendelsohn at ¶ 6. Moreover, Defendants cannot operate in stadiums

12    and other venues unless they comply with facility security policies and procedures. Ta

13    at ¶ 7; Hancock at ¶ 5.

14           8.     <u>Defendants can easily record waiting time spent waiting for and</u>

15                 <u>undergoing security checks and check-in procedures</u>

16           Defendants utilize Kronos timekeeping system. Ex. 7, DEF000345. Plaintiff

17    and the Class Members clock in for their shifts by swiping their employee card or by

18    entering their name and social security into a physical time clock. *See id.*; *see also*

19    Peskett at ¶ 14; Williams at ¶ 10; Aaron at ¶ 11; Ta at ¶ 8; Mendelsohn at ¶ 7; Anderson

20    at ¶ 4. Kronos provides the ability for Plaintiff and the Class Members to clock in via

21    portable devices.[14] Thus, upon arriving at the stadium or venue, Plaintiff and the Class

22    Members could clock in prior to undergoing the security inspections and check-in

23    procedures via mobile devices. Alternatively, Defendants' manager could manually

24    adjust the employees' time card in the Kronos system. Ex. 2, DEF000050 (Time Report

25    Correction). Yet, Defendants do not utilize these technologies

26           9.     <u>Defendants have shifted their recordkeeping burdens onto the Class</u>

27                 <u>Members in an attempt to insulate themselves from liability</u>

28

---

[14] https://www.kronos.com/products/workforce-ready-suite/workforce-ready-demo-center

Defendants require the Class Members to "confirm" their hours worked at the end of each shift.  Ex. 3, DEF000083; *see also*, Ex. 4, DEF00098-160. On the merits, Plaintiff will show that an employer must do more to discharge its affirmative record keeping and compensation duties under the Labor Code than to simply shift the burden onto the individual employees to question their hours every shift as a result of the same systematic deficiencies.[15] For the purposes of the current motion, however, the Class Members are similarly situated even with respect to Defendants' payroll confirmation process in that Defendants use the same process for all the employees throughout California. *See id*. at DEF000082-83.

## III.   SUMMARY OF APPLICABLE LAW

### A. Obligation to pay for All Hours Worked

Section 4 of Wage Order No. 5 requires employers to pay *at least* minimum wage for all hours worked. IWC Wage Order No. 5 § 4.[16] "Hours worked means the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id*. § 2(H.)

In addition to the obligation to pay for all hours worked, the employer has an obligation to maintain accurate records of the hours worked. Wage Order No. 5, subd. 7(A). This includes: "Time records showing when the employee begins and ends each work period." Subd. 7(A)(3). It also includes: "total hours worked in the payroll period." Subd. 7(A)(5).

Additionally, the California Supreme Court has unambiguously held that employees are subject to an employer's "control" when the employer "confines its employees to the premises as they wait for and undergo [security] search[es]." *Frlekin*

---

[15] Additionally, Defendants' uniform written Time Report Correction policy deters reporting such deficiencies providing that "[r]egularly failing to properly record time worked may result in progressive counseling up to and including termination." Ex. 2, DEF000050.
[16] Under California law, the Industrial Welfare Commission Wage Orders "are to be accorded the same dignity as statutes." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1027 (2012)

1    *v. Apple Inc*., 8 Cal. 5th 1038, 1047 (2020), reh'g denied (May 13, 2020). Further, the

2    California Supreme Court held in *Troester v. Starbucks Corp*., 5 Cal.5th 829, 848

3    (2018), that employers must pay for all regularly reoccurring activities, even if such

4    activities take only minutes. "The relevant statues and wage order do not allow

5    employers to require employees to routinely work for minutes off the clock without

6    compensation." *Id*. "[E]mployers are in a better position than employees to devise

7    alternatives that would permit the tracking of small amounts of regularly occurring

8    worktime." *Id*. "[T]echnological advances may help with tracking small amounts of

9    time. An employer may be able to customize and adapt available time tracking tools or

10   develop new ones when no off-the-shelf product meets its need." *Id*.

11   **B. Obligation to Provide Accurate Wage Statements**

12         Labor Code section 226(a) requires employers to provide accurate itemized

13   wage statements:

14         Every employer shall, semimonthly or at the time of each payment of

15         wages, furnish each of his or her employees . . . an accurate itemized

16         statement in writing showing (1) gross wages earned, (2) total hours

17         worked by the employee, …

18         Here, the wage statements are inaccurate because they do not include the actual

19   hours worked. Further, the failure to provide this required information injured Plaintiff

20   and the putative class by making it difficult, if not impossible, to discover the violations

21   at issue. *See also* Labor Code § 226(e)(2)(B)(i).

22   **C. Restitution for Unfair Competition Claims**

23         Unpaid wages are "unlawful business practices" under the Unfair Competition

24   Law (Bus. & Prof. Code §§ 17200, *et seq*.). *People v. Los Angeles Palm, Inc*. 121

25   Cal.App.3d 25 (1981). Claims under Bus. & Prof. Code § 17200 are subject to a four-

26   year statute of limitations. Bus. & Prof. Code § 17208; *Cortez v. Purolator Air*

27   *Filtration Products Co.* (2000) 23 Cal.4th 163, 178–179. Plaintiff seeks restitution of

28   unpaid wages under the UCL.

**D. Standards Governing Motions for Class Certification**

Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979-80 (9th Cir. 2011), citing *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir.), amended by 273 F.3d 1266 (9th Cir.2001).

The Rule 23 analysis begins with Rule 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (June 20, 2011). Plaintiff bears the burden of establishing that each of the proposed classes meets the requirements of Rule 23(a) and one section of Rule 23(b). *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996). However, the requirements of Rule 23 "should be liberally construed." 3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002).

When deciding on a certification motion, all factual allegations in Plaintiff's operative complaint must be accepted as true. *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 688 n.3 (9th Cir. 1977), *cert. denied* 434 U.S. 829 (1977); *Blackie v. Barrack*, 524 F.2d 891, 900 n. 17 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). As the Ninth Circuit reiterated in *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983), a limited "inquiry into the substance of a case may be necessary to ascertain satisfaction of Rule 23(a)'s commonality and typicality requirements, [but] it is improper to advance a decision on the merits to the class certification stage." *Id.* at 480 (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-178 (1974)); *see also Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996). "Nonetheless, the district court does not conduct a mini-trial to determine if the class 'could actually prevail on the merits of their claims.' [*Ellis*], at 983 n. 8; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir.2010) (citation omitted) (court may

1    inquire into substance of case to apply the Rule 23 factors, however, '[t]he court may

2    not go so far ... as to judge the validity of these claims.').'' *Johns v. Bayer Corp.*, 2012

3    WL 368032 (S.D. Cal. Feb. 3, 2012). Instead, at this point, the Court need only

4    determine if the Plaintiff has satisfied Rule 23, not weigh competing evidence. *Staton*

5    *v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003); *Blackie*, 524 F.2d at, 901 n.17.

6          Evidence put forward at this time is not evaluated on an admissibility standard,

7    such as would be the case for summary judgment or trial. At the certification stage, "the

8    court makes no findings of fact and announces no ultimate conclusions on Plaintiffs'

9    claims." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008),

10   *reversed on other grounds*. "[I]n determining whether to certify the class, the district

11   court is bound to take the substantive allegations of the complaint as true." *In re*

12   *Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335,

13   1342 (9th Cir. 1982) (citing *Blackie*, 524 F.2d at 901 n.7 (9th Cir. 1975)). "[T]he court

14   may consider evidence that may not be admissible at trial," *Mazza*, 254 F.R.D. at 616

15   (citing *Eisen*, 417 U.S. at 178), and a "district court may certify a class without

16   supporting evidence." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D.

17   Cal. 2010) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)).

18   "The court need not address the ultimate admissibility of the parties' proffered exhibits,

19   documents and testimony at this stage, and may consider them where necessary for

20   resolution of the [Motion for Certification]." *Mazza*, 254 F.R.D. at 616. "The amount

21   of damages is invariably an individual question and does not defeat class action

22   treatment." *Blackie*, 524 F.2d at 905.

23         Class certification under Fed. R. Civ. P. 23 is a two-step process. After the trial

24   court has concluded that Rule 23(a) has been satisfied, a plaintiff must also establish

25   that one of the bases for certification in Rule 23(b) are met. Here, Plaintiff invokes

26   23(b)(2) and 23(b)(3). Certification under Rule 23(b)(2) is appropriate where "the party

27   opposing the class has acted or refused to act on grounds that apply generally to the

28   class, so that final injunctive relief or corresponding declaratory relief is appropriate

respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).  23 (b)(3) requires plaintiffs to prove the elements of "predominance" and "superiority": "questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3).

## IV. <u>ARGUMENT</u>

### A. The proposed Class meets the requirements of Rule 23(a)

1. <u>Plaintiff satisfies numerosity</u>

Defendants have identified approximately 7119 individuals in the proposed class as of July 13, 2021. Grombacher at ¶ 18; Ex. 1. This easily satisfies numerosity under Fed. R. Civ. P. 23(a) (1).  *See Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010) (numerosity generally satisfied by 40 members).  As in other employment class actions, the class members are ascertainable through Defendants' records.

2. <u>Plaintiff satisfies commonality under Rule 23(a)(2) because admittedly common policies, practices and deficiencies are apt to drive resolution of the litigation</u>

Commonality assesses "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  The standard for commonality is permissive:  even a "single common question" can satisfy the commonality requirement. *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1044 (N.D. Cal. 2020). "Thus, 'where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'" *Id*. (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)); *see also Lewis v. Alert Ambulette Serv. Corp*., 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012) ("In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.").

Here, common issues that the Court can and should resolve on a class-wide

basis, include: (1) whether Plaintiff and the Class Members are subject to Defendants' control while undergoing security checks at the facilities; (2) whether Plaintiff and the Class Members are subject to Defendants' control while undergoing Defendants' check in procedures; (3) whether Defendants failed to pay Plaintiff and the Class Members for time spent undergoing security checks and check-in procedures; (4) whether the time Plaintiff and the Class Members spend undergoing security checks before clocking-in constitutes "hours worked" and is therefore compensable; (5) whether the time Plaintiff and the Class Members spend undergoing Defendants' check in procedures before clocking-in constitutes "hours worked" and is therefore compensable; (6) whether the time Plaintiff and the Class Members spend undergoing Defendants' check in procedures before clocking-in is for Defendants' benefit; (7) whether Defendants knew or should have known that time spent undergoing security checks and check-in procedures was compensable; (8) whether Defendants' failure to pay Plaintiff and the Class Members for time spent undergoing security checks and check-in procedures results in the denial of overtime; and (9) whether the wage statements provided to Plaintiff and the Class Members complied with Labor Code Section 226(a).

> a. *Commonality is measured against Plaintiff's legal theory as to how Defendant's policies fall short of the minimum legal duties of an employer*

Commonality must be examined through the lens of the plaintiff's theories of liability. *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808-10 (9th Cir. 2009); *Sullivan v. DB Inv.*, 667 F.3d 273, 299 (3d Cir. 2011) (citing *Dukes*, 131 S. Ct. 2541); *see also Villalpando v. Exel Direct Inc.*, 2016 WL 1598663, at *56 (N.D. Cal. Apr. 21, 2016) (court cannot "disregard plaintiffs' theory of recovery."); *see also Alberts v. Aurora Behavioral Health Care*, 241 Cal. App. 4th 388, 410 (2015) (class certification evaluated "under the prism of the *plaintiff's theory of recovery*.") (citations omitted). Here, Plaintiff's theory of the case is that Defendant's uniform policies and deficiencies

1  do not measure up to the affirmative obligations that employers have under California

2  law, namely, the legal duty to compensate employees for all time spent subject to an

3  employer's control.

4         b. *Defendants' security check and check-in procedures present common*

5            *questions concerning whether Defendants are "suffering or permitting"*

6            *work*

7         California law places a duty on employers to compensate, not just for work that

8  is required, but also "all the time the employee is suffered or permitted to work, whether

9  or not required to do so." Wage Order 5 at 2(K). "The basis of liability is the defendant's

10  knowledge of and *failure to prevent* the work from occurring." *Martinez v. Combs*, 49

11  Cal.4th 35, 70 (2010) (emphasis in original).  An employer is liable if: (1) it knew or

12  should have known that off-the-clock work was occurring; and (2) stood idly by.

13  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

14         Part and parcel with this rule is that employers must take affirmative steps to

15  prevent off-the-clock work, beyond the mere promulgation of a written policy.

16  Management "cannot sit back and accept the benefits without compensating for them.

17  The mere promulgation of a rule against such work is not enough. Management has the

18  power to enforce the rule and must make every effort to do so." *Morillion v. Royal*

19  *Packing Co.*, 22 Cal. 4th 575, 584 (2000) (citing 29 C.F.R. § 785.13).[17] The employer's

20  duty arises even where employees do <u>not</u> report the additional hours worked. *Lillehagen*

21  *v. Alorica*, Inc., 2014 WL 6989230, at *20 (C.D. Cal. 2014); *Ketchum v. City of Vallejo*,

22  523 F. Supp. 2d 1150, 1163 (E.D. Cal. 2007); *see also Chao v. Gotham Registry, Inc.*,

23  514 F.3d 280, 288 (2d Cir. 2008).

24         "The prohibition against 'sitting back' or 'standing idly by' requires the

25  employer to take reasonable steps to investigate the suspected non-compensation, to

26

27  [17] Federal labor laws set the floor for an employer's obligations in California. *Ming-Hsiang Kao*

28  *v. Joy Holiday*, 12 Cal. App. 5th 947, 955 (2017) ("Although state law standards are generally more protective of employees than federal standards, California employers must comply with whichever standard provides greater protection to employees.").

1  ensure that the employee is paid for the work that has already occurred, and to stop

2  future non-payment for work or compensable breaks from occurring." *Lillehagen*, 2014

3  WL 6989230, at *19.  On the merits, Plaintiff will show that Defendants have failed to

4  do so here. For purposes of the current motion, however, Defendants' security check

5  and check-in procedures raise common questions concerning whether Defendants are

6  "suffering or permitting work."

7      c.  *Written and anecdotal evidence that Defendants instruct the class*

8          *members to arrive significantly before they are permitted to clock-in*

9          *presents a common question as to whether Defendants are meeting their*

10         *legal obligation to pay for all hours worked*

11     The California Supreme Court has unambiguously held that employees are

12  subject to an employer's "control" when the employer "confines its employees to the

13  premises as they wait for and undergo [security] search[es]." *Apple,*  8 Cal. 5th at 1047.

14  Additionally, "evidence of a systematic company policy to pressure or require

15  employees to work off-the-clock," may support class certification. *Brinker Rest. Corp.*

16  *v. Superior Court*, 53 Cal. 4th 1004, 1051–52 (2012) (collecting cases).

17     As shown above, there is both documentary and anecdotal evidence that

18  Defendants instruct the class members to come in "an extra hour" early so that they can

19  "arrive in [] full uniform on Game Day (1/1/2020) at [their] scheduled call time." Ex.

20  A to Peskett. This exact instruction was presented in writing to Plaintiff as part of her

21  schedule confirmation. *Id*. Further, Defendants' own handbook does not provide that

22  security or check-in procedures are activities which should be performed on the clock.

23  *See* Ex. 1 at DEF000050 (setting forth examples of compensable work but omitting

24  time spent undergoing security checks and check-in procedures).[18] This evidence

25

26  _____

    [18] In *Rodriguez v. Nike,* the court rejected the claim that Nike had a policy of prohibiting off the

27  clock work along with supporting time adjustments for security check waiting times because, like

    Defendants here, it had no affirmative policy requiring payment for such time: "Nike's arguments

28  are unconvincing, however, because it does not have a written policy providing for payment for

    time spent in exit inspections. The waiting time policy in the Employee Handbook does not

    provide pay for time spent waiting for exit inspections or getting inspected." *Rodriguez v. Nike*

-18-

1   further corroborates Plaintiff's common contention that Defendants do not consider the
2   time undergoing these tasks to be compensable work. Peskett at ¶¶ 8, 14 (testifying that
3   although she was instructed to arrive well before her scheduled shift time, she was
4   prohibited from clocking in more than 7 minutes prior to her start time) Williams at Ex.
5   A, ¶ 9; Aaron at ¶ 11; Ta at ¶ 7; Mendelsohn at ¶ 6; Saucillo at ¶ 6 ("I have always
6   understood that my time getting searched by security and checking in is not paid by
7   Levy"); Hancock at ¶ 5; Anderson at ¶ 3; Reyes at ¶¶ 5-9; Cyiark at ¶¶ 5-9. If this
8   common contention is true on the merits, there is most certainly a classwide violation
9   of the most basic requirement to prevent off-the-clock work and to pay for overtime
10  that is suffered and permitted.

11          d.  *Security Check Cases Are well-suited for Class Certification*

12          Whether Class Member time spent undergoing security inspections and check-
13  in procedures constitutes compensable "hours worked" under California law is
14  indisputably a common issue that can and should be resolved on a class-wide basis.
15  Indeed, courts in the Ninth Circuit have routinely certified claims based on the failure
16  to compensate employees for time spent going through security procedures. *See*
17  *Rodriguez v. Nike Retail Services, Inc.*, 2016 WL 8729923, at *6 (N.D. Cal. Aug. 19,
18  2016) ("All employees have to be visually inspected before they can leave the store,
19  and so no individualized inquiries are required."); *Chavez v. Converse, Inc.*, No. 15-
20  3746 NC, Dkt. No. 89 (N.D. Cal. Sept. 22, 2016) (although Converse did not have an
21  explicit policy requiring off-the-clock bag checks, common questions of fact and law
22  were presented where "most, if not all, Converse stores are set up such that an employee
23  would necessarily be off-the-clock when a bag check occurs."); *Greer v. Dick's*
24  *Sporting Goods, Inc.*, 2017 WL 1354568, at *6 (E.D. Cal. Apr. 13, 2017) (certifying a
25  "security check class" of "all non-exempt or hourly paid employees who worked for
26  Defendant in its DSG retail stores"); *Moore v. Ulta Salon Cosmetics & Fragrance Inc.*,

27  ──────────────────────

28  *Retail Services, Inc.*, No. 141508 BLF, 2016 WL 8729923, at *4 (N.D. Cal. Aug. 19, 2016). The
    Rodriguez court found that common issues predominated because Nike had no uniform policy of
    paying for time spent waiting to be inspected. *Id.* at *9.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MPA IN SUPPORT

311 F.R.D. 590, 604, 612 (C.D. Cal. 2015); *Frlekin v. Apple Inc*., 309 F.R.D. 518, 526 (N.D. Cal. 2015); *Lao v. H&M Hennes & Mauritz, L.P*., 2018 WL 3753708 at *1–2 (N.D. Cal. 2018); *Otsuka v. Polo Ralph Lauren Corp*., 2010 WL 366653, at *5 (N.D. Cal. Jan. 25, 2010) (denying motion to decertify); *Cervantez v. Celestica Corp*., 253 F.R.D. 562, 572 (C.D. Cal. 2008); *Kurihara v. Best Buy Co. Inc*., 2007 WL 2501698, at *6 (N.D. Cal. Aug. 30, 2007).  The claims of the Class Members here will turn on the same common issue: whether the time they spend complying with security inspections and undergoing Defendants' check-in procedures constitutes hours worked and is therefore compensable.

e.  *The failure to identify all hours worked on the wage statements presents a common claim under Labor Code 226(a) and is directly attributable to the security and check-in policies and practices*

Labor Code section 226(a)(1)-(2) requires employers to furnish employees with wage statements showing "showing (1) gross wages earned, (2) total hours worked by the employee." Cal. Lab. Code § 226(a)(1)-(2). The failure to include this information on a wage statement is deemed to cause injury under Labor Code section 226(e). *Id.* at § 226(e)(2)(B)(i). The wage statements provided to Plaintiff and the Class Members do not identify all hours worked or all gross wages earned because they omit time spent undergoing security checks and check-in procedures. Further, Defendants' defense that time spent by Plaintiff and the Class members undergoing security checks and check-in procedures is not compensable raises a common question of law that is amenable to class certification. *Huntsman v. Sw. Airlines Co*., 2021 WL 391300, at *4 (N.D. Cal. Feb. 3, 2021) (question of law common to all can satisfy commonality).

3.  <u>Plaintiff satisfies typicality under Rule 23(a)(3)</u>

The Rule 23(a)(3) typicality standard is "permissive." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir.1998) overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not

1   be substantially identical." *Hanlon*, 150 F.3d at 1020.   The proposed class

2   representative here performed the same or similar jobs and was subject to the same

3   uniform policies and practices, as the other individuals in the putative class. Plaintiff

4   therefore satisfies the typicality requirement.

5         4.   Plaintiff is an adequate representative under Rule 23(a)(4)

6         The adequacy requirement is satisfied where the class representative: 1) has

7   common, and not antagonistic, interests with unnamed class members; and 2) will

8   vigorously prosecute the interests of the class through qualified counsel. *See Amchem*

9   *Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997); *Hanlon*, 150 F.3d at 1020-21. The

10  proposed class representative shares common claims and interests with the class, and

11  there is no evidence she has any conflict that would prevent her from vigorously

12  prosecuting the case in the best interest of the class. Indeed, she has actively participated

13  in the case. *See* Peskett at ¶¶ 29-31. Additionally, Plaintiffs' counsel have years of

14  experience in prosecuting complex class actions. *See* Grombacher at ¶¶ 2-9.[19]

15  **B.  The proposed class satisfies the requirements of Rule 23(b)(2)**

16        Certification under Rule 23(b)(2) is appropriate where "the party opposing the

17  class has acted or refused to act on grounds that apply generally to the class, so that final

18  injunctive relief or corresponding declaratory relief is appropriate respecting the class

19  as a whole[.]" Fed. R. Civ. P. 23(b)(2).   This requirement is "unquestionably satisfied

20  when members of a putative class seek uniform injunctive or declaratory relief from

21  policies or practices that are generally applicable to the class as a whole." *Parsons v.*

22  *Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).  Plaintiff's challenges to Defendants' policies

23  and practices are ideally suited for class treatment under Rule 23(b)(2) because they are

24  applicable to the class as a whole.

25  **C.  The proposed class satisfies the requirements of Rule 23(b)(3)**

26        1.   Common questions predominate over individual questions

27

28  _____

[19] Plaintiff's counsel also should be appointed as class counsel under Fed. R. Civ. P. Rule 23(g)(1) & (4).  *See* Grombacher at ¶¶ 2-9, 17.

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *See Amchem,* 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). The presence of individual issues does not preclude certification. *Id.* at 1163. Indeed, Rule 23(b)(3) "'does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to classwide proof,' so long as one or more common questions predominate." *Huntsman v. Sw. Airlines Co.*, 2021 WL 391300, at *10 (N.D. Cal. Feb. 3, 2021) (citation omitted). "The main concern of the predominance inquiry under Rule 23(b)(3) is 'the balance between individual and common issues.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545–46 (9th Cir. 2013) (citation omitted). Predominance is not "a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (citations omitted).

Furthermore, challenges to admittedly common practices that drive the determination of liability predominate over individual questions of adverse effect. *See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012), abrogated on other grounds by *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541 (7th Cir. 2016). "The Ninth Circuit has held that 'predominance in employment cases is rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer.'" *Huntsman*, 2021 WL 391300, at *10 (quoting *Senne,* 934 F.3d at 938).

Similarly, the possibility that damages may be individualized does not defeat predominance. Indeed, damages are individualized in nearly all wage-and-hour class

1   actions. *Leyva v. Medline Industries Inc.,* 716 F.3d 510, 513-14 (9th Cir. 2013).  And,

2   our Supreme Court has recognized that a class can be certified under Rule 23(b)(3) even

3   if not all class members have suffered injury as a result of the allegedly unlawful

4   practice. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049-1050 (2016); *see also*

5   *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012).

6           Here, the only question that needs to be answered in order to determine liability

7   for the Class is whether the time spent by employees waiting for and submitting to

8   security checks and Defendants' check-in procedures should have been compensated.

9   If the time is not compensable, then the claim fails for Plaintiff and the Class Members

10  as a whole. However, if the time in question is compensable, then Plaintiff and the Class

11  Members are entitled to their unpaid wages.

12          Additionally, Plaintiff's claim for inaccurate wage statements under Lab. Code

13  § 226(a), and the claim for restitution under Bus. & Prof. Code § 17200 flow directly

14  from and are derivative of the underlying wage-and-hour claim and therefore "if

15  Plaintiff's other claims can be tried on a class-wide basis, these claims are also ripe for

16  class adjudication." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal.

17  2010); *Smith v. Ford Motor Company*, 749 F.Supp.2d 980, 997 (N.D. Cal. 2010) (claim

18  brought under unlawful prong of UCL rises or falls with underlying statutory claim).

19  Because common issues predominate for the off-the-clock claim, they necessarily

20  predominate for the derivative claims, and those claims should be certified as well.

21          2.      A class action is superior to the other available methods for fairly and

22                  efficiently adjudicating the controversy

23          Plaintiff also satisfies each of the Rule 23(b)(3) superiority factors.  There is no

24  indication that class members have an interest in individually controlling their own

25  cases, as the cost of individual actions would be prohibitively high.  *See, e.g., Amchem*,

26  521 U.S. at 617; *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  Moreover,

27  even if each Class Member's claim were large enough to pursue individually, "that does

28  not defeat certification, especially in light of the substantial judicial resources conserved

1  by determining common issues in a single adjudication." *Dalton v. Lee Publ'ns, Inc*,
2  270 F.R.D. 555, 565 (S.D. Cal. 2010).  A class action is also superior because some
3  class members "may fear reprisal" for bringing individual claims. *Perez v. Safety-Kleen*
4  *Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008).

5      As to the second superiority factor, none of the cases of which Plaintiff is aware
6  that allege similar claims against Defendants have been certified as a class action.[20] The
7  third factor – the desirability of concentrating the litigation in this forum – is also met,
8  because the class covers Defendants' employees who have worked in California and
9  the Court is familiar with the issues and facts of this case from earlier motion practice.
10 Plaintiff also meets the fourth factor because trial will not pose any unique case
11 management problems.  On the contrary, the class action would be a far more efficient
12 vehicle for resolving the central, class-wide liability questions than thousands of
13 individual trials. *See Thomas v. Baca,* 231 F.R.D. 397, 403 (C.D. Cal. 2005) (Any
14 difficulties "encountered in the management of this class… would be less than the
15 judicial resources that would be expended in adjudicating individual [] actions[.]").

16              **V.    A CLASS-WIDE TRIAL IS MANAGEABLE**

17     As noted above, "[t]he amount of damages is invariably an individual question
18 and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th
19 Cir. 1975). Here, the parties can file cross motions for summary judgment to decide the
20 issue of whether Defendants' security checks and check-in procedures should be
21 deemed as hours worked under California law. If this Court rules in Defendants' favor,
22 then this case is over. If this Court rules in Plaintiff's favor, however, the parties can
23 proceed to the damage phase, in which the parties can agree to a representative sample
24 to extrapolate to the class. *Jimenez*, 2012 WL 1366052, at *20. Many Courts have
25 approved the use of questionnaires and surveys as well as representative testimony in
26
27
28
___
[20] While the *Hightower v. Compass Group U.S.A., Inc.*, *et al*.  Santa Clara County Superior Court Case Nos. 19CV359262, 20CV362571 cases allege similar claims, a review of the docket indicates that they remain in the pleadings stage and discovery has not yet commenced. Grombacher at ¶ 15.

1  proving both liability and damages in class actions *See*, *Greer*, 2017 WL 1354568, at
2  *7; *Kurihara*, 2007 WL 2501698, at *11 ("As to the individualized issues of damages,
3  courts have developed numerous efficient means to resolve such issues, including
4  questionnaires, surveys, representative testimony, and other aggregate analysis");
5  *Rodriguez*, 2016 WL 8729923, at *10 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.
6  Ct. 1036, 1045- 49). Thus, the management of the trial in this action will be feasible.

7                          **VI.    CONCLUSION**

8          In light of the foregoing, Plaintiff respectfully requests that this Court grant
9  Plaintiff's motion.

10                                          Respectfully Submitted,

11

12                                          **BRADLEY GROMBACHER LLP**

13         Dated:  July 19, 2021            By:  */s/ Kiley L. Grombacher*
14                                          Kiley L. Grombacher
                                            Attorneys for Plaintiff
15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MPA IN SUPPORT